```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

PATRICIA HEATON                                CIVIL ACTION

VERSUS                                         NO: 98-1823 c/w
                                               99-2603

MONOGRAM CREDIT CARD                           SECTION: "J"(1)
BANK OF GEORGIA, ET AL


## ORDER AND REASONS

In this long-running saga, Patricia Heaton, on behalf of herself and a putative class, alleges Monogram Credit Card Bank illegally charged interest rates and late fees exceeding those allowed by Louisiana's usury laws. Monogram and the Federal Deposit Insurance Corporation, as intervenor, argue Plaintiff's claims are preempted by federal law allowing a federally insured State-chartered bank to export its home state interest rates and late-fee charges when doing business in another state. More than six years after this litigation began, Monogram and the FDIC raise for the first time the question of whether Heaton has standing to challenge the FDIC's decision granting Monogram's application for federal deposit insurance. Issues of standing

must be decided before considering the merits of Plaintiff's claims. For the reasons that follow, the Court finds that Heaton lacks standing to bring this action, and her claims must be dismissed.

I. BACKGROUND

Monogram Credit Card Bank of Georgia, a Georgia credit card bank, issued a credit card to Patricia Heaton so that she could finance purchases from a now defunct retail store in New Orleans, Campo Appliances.[1] Heaton signed a credit application agreement acknowledging that Georgia law would apply to her credit account. Ultimately, Heaton failed to make timely payments on her account, thereby incurring certain interest charges and late fees. When Heaton failed to pay these charges, Monogram sued her in First City Court in New Orleans. In turn, Heaton filed a class action lawsuit against Monogram in state court, alleging, *inter alia*, that Monogram charged interest and late fees in excess of the limit allowed by the Louisiana Consumer Credit Law, La. R.S. 9:3523-24 and R.S. 9:3527. Monogram removed the suit to federal court based on federal question jurisdiction. As the basis for removal, Monogram argued that federal law, namely, section 27 of the Federal

---

[1]On February 7, 2005 Monogram merged into GE Capital Consumer Card Company, a Federal Savings Bank. The successor entity is now GE Money Bank, however, for purposes of this Order and Reasons, the Court will refer to GE Money Bank as Monogram.

Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, preempted Louisiana law.[2] This Court twice remanded the case to state court based on lack of federal subject matter jurisdiction, but ultimately the case was removed again when the FDIC intervened on Monogram's behalf.[3]

The FDIC and Monogram argue that Heaton's claims based on state usury law are preempted by section 1831d(a), which allows federally insured "State banks" to export their home state interest rates when doing business in another state, even if those rates exceed the other state's usury laws.[4] To qualify as a "State bank" for purposes of the FDIA, a State-chartered bank must be "engaged

---

[2]Section 1831d(a) provides as follows:

> In order to prevent discrimination against State-chartered insured depository institutions, . . . with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank . . . may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, . . . charge on any loan . . . interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank . . . or at the rate allowed by the laws of the State . . . where the bank is located, whichever may be greater.

[3]The FDIC's intervention created federal question jurisdiction under 12 U.S.C. § 1819(b)(2)(A).

[4]The term "interest" encompasses late-payment fees. *Smiley v. Citibank,* 517 U.S. 735, 116 S. Ct. 1730 (1996).

in the business of receiving deposits."[5]  In 1988 Monogram applied for federal deposit insurance.  Although Monogram is a credit card bank which does not accept deposits from the general public, the FDIC approved Monogram's application.[6]  Implicit in this approval was a determination by the FDIC that Monogram is "engaged in the business of receiving deposits" and is a "State bank" for purposes of the FDIA.  As such, Monogram is allowed to  export its interest rates and fees when it does business in other states.[7]  Because Louisiana's usury laws are expressly preempted by § 1831d(a), Monogram, which is chartered by the State of Georgia, is permitted to charge its Louisiana credit card holders, including Heaton, Georgia's higher interest rates and fees.

The FDIC argues that because the statutory "engaged in" requirement is ambiguous and subject to differing interpretations, as the governmental agency charged with administering the FDIA, its interpretation is entitled to *Chevron* deference.[8]  Heaton asserts

---

[5] 12 U.S.C. § 1813(a)(2).

[6] The FDIC construed the "engaged in" provision to require at least one deposit in excess of $500,000.  Monogram met this minimal requirement, although its only deposit was from its parent corporation, GE Capital Corporation.

[7] 12 U.S.C. § 1831d(a).

[8] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781–82(1984)(If the statute is ambiguous with respect to the specific issue, the court defers to an agency's reasonable interpretation.).  A court

that the statute is not ambiguous, and that the FDIC's interpretation is arbitrary, unreasonable and contradicts the plain language of the statute.  Heaton contends that Monogram was clearly not "engaged in the business of receiving deposits" because it received no deposits from the general public, but rather only a single deposit from its parent corporation.

The parties have now filed cross motions for summary judgment, which the court took under advisement following extensive briefing. Among the many legal and policy arguments set forth in their summary judgment motions, Monogram and the FDIC raise, for the first time in this seven-year-old case, the issue of whether Patricia Heaton has standing to challenge the FDIC's determination that Monogram is a State bank within the meaning of the FDIA. While the Court cannot fathom why defendants waited until now to raise this threshold legal issue, nonetheless, before considering the merits of the summary judgment motions, the Court must first

---

should accord *Chevron* deference to agencies "not because of a presumption that they drafted the provisions in question, or were present at the hearings, or spoke to the principal sponsors; but rather because of a presumption that Congress when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows."  *Smiley*, 517 U.S. at 740-41, 116 S. Ct. at 1733.

consider the standing issue.[9]

**II. DISCUSSION**

Standing encompasses two components – constitutional and prudential.[10] Constitutional standing requires three elements: "(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision."[11] The prudential standing requirement is employed to "determine whether the plaintiff 'is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'"[12]

Defendants contend, among other things, that Plaintiff does not have standing to raise the issue of whether Monogram qualifies as a "State bank" under the FDIA, because Congress granted the FDIC

---

[9]*See Ford v. NYL Care Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002)(explaining that an issue of constitutional standing must be decided prior to the issues relating to prudential standing and the merits because constitutional standing "determines the court's fundamental power even to hear the suit.")(quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002)).

[10]*Hazardous Waste Treatment Council v. U.S. Environmental Protection Agency*, 861 F.2d 277, 281 (U.S. App. D.C. 1988).

[11]*National Solid Waste Management Association v. Pine Belt Regional Solid Waste Management Authority*, 389 F.3d 491, 498 (5th Cir. 2004)(citations omitted).

[12]*See id*. at 498 (quoting *Procter & Gamble Co. v. Amway Corp*., 242 F.3d 539, 560 (5th Cir. 2001)(citation omitted)).

the exclusive right to determine whether a State-chartered bank meets the "engaged-in" requirement for federal deposit insurance. Defendants assert that Plaintiff, an individual credit card debtor, has neither constitutional, nor prudential standing, because first, the injury Plaintiff claims is not redressable by the judiciary (constitutional standing); and second, Plaintiff is not within the zone of interests of those protected by the FDIA and cannot challenge actions under that statute (prudential standing).

### A. CONSTITUTIONAL STANDING

Defendants contend that the third element of constitutional standing – that the injury likely will be redressed by a favorable decision – is absent in this case.  Defendants' argument is premised on two separate grounds: (1) Defendants argue that the court does not have the power to make certain determinations in this matter, which are dispositive of Plaintiff's case, because they are specifically reserved to the FDIC, and (2) Defendants contend that even if the court has the power to make certain determinations at issue, it is not likely that the injury will be redressed by a favorable decision.

**(1)   Does the court have the power to determine whether a bank is "engaged in the business of receiving deposits"?**

The FDIC has made the critical determination that Monogram is "engaged in the business of receiving deposits" and is thus a

"State bank." Defendants contend the FDIC's determination cannot be reviewed by this Court, based on 12 U.S.C. § 1818(p) which provides:

> Notwithstanding any other provision of law, whenever the Board of Directors shall determine that an insured depository institution is not engaged in the business of receiving deposits, other than trust funds as herein defined, the [FDIC] shall notify the depository institution that its insured status will terminate at the expiration of the first full semiannual assessment period following such notice. A finding by the Board of Directors that a depository institution is not engaged in the business of receiving deposits, other than such trust funds, shall be conclusive.

As can be seen, the Board of Director's determination – that a depository institution is "not engaged in the business of receiving deposits" – is conclusive. Therefore, Defendants allege that if this Court were to review the FDIC's decision, it would usurp a power specifically reserved to the FDIC for final determination. Thus, the Court's authority to review the FDIC's determination as to whether a bank is "engaged in the business of receiving deposits" is in question.

Under the Administrative Procedure Act, any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" has standing to seek judicial review of the agency action.[13] A presumption exists "that judicial review is

---

[13] 5 U.S.C. § 702.

8

available to an individual aggrieved by final agency action, so long as no statute precludes review or the action is not one 'committed by law to agency discretion.'"[14]

> Whether judicial review may be available in any particular instance requires more than a mechanical application of this general rule. Although courts must respect congressional intent that certain aspects of agency decisionmaking be left wholly to administrative discretion, [ ] the exception to judicial review is a narrow one. Inquiry properly runs to the question for which review is sought and to congressional intent with regard to judicial review as it relates to that question. In general, even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. As the District of Columbia Circuit has observed, "(w)hen the bounds of discretion give way to the stricter boundaries of law, administrative discretion gives way to judicial review." Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself.[15]
>
> In this case, Plaintiff disclaims an intention to challenge

---

[14]*See Garcia v. Neagle*, 660 F.2d 983, 987 (4th Cir. 1981) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S. Ct. 1507, 1510(1967)(citing 5 U.S.C. § 701(a)); *see Barlow v. Collins*, 397 U.S. 159, 166-67, 90 S. Ct. 832, 837-38(1970); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 156-57, 90 S. Ct. 827, 831(1970)).

[15]*Id.*(citations omitted).

any regulatory action or decision by the FDIC,[16] but rather, argues that she seeks resolution of the question whether Monogram may avail itself of preemption under section 1831d(a) for the 1988 to February 29, 2000 time period.  It is evident from Plaintiff's arguments, however, that Plaintiff is in fact challenging the FDIC's determination that Monogram satisfied the engaged-in requirement for federal deposit insurance status.  As stated above, the Court may not review agency action when the challenge is only to the decision itself.  Therefore, the Court may not review the FDIC's 1988 decision, which implicitly determined that Monogram qualified as a "State bank" under the FDIA.

### (2) If the Court has the power to make such determination, is it likely that Plaintiffs will obtain a *favorable* ruling?

Even if the Court has the power to review the agency action, it is not likely that Plaintiff will obtain a favorable ruling. Monogram points out that even if the FDIC erred in its decision, once Monogram was federally insured as a State bank under the FDIA, it had the right to export Georgia's higher interest rates and fees.  Further, Monogram argues that Heaton's alleged injury, being charged fees and interest rates in excess of what is allowed under

---

[16] But, see *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002)(finding the FDIC's interests in this litigation to be substantial because Heaton has directly drawn into question whether or not Monogram is a "State bank").

Louisiana law, cannot be redressed unless the Court punishes Monogram for acting in accordance with the legal status granted to it by the FDIC in 1988. To do so, the Court would first have to find that the FDIC erred in its determination.

Regardless of the correctness of the FDIC's decision to approve Monogram's application for insurance, Monogram acted within the authority granted to it by the FDIC. It would be unjust to permit Plaintiff to recover damages from Monogram for relying on the FDIC's decision and acting in accordance with the authority granted to it under the law. Consequently, Plaintiffs cannot likely obtain a favorable ruling against Monogram.

### B.  PRUDENTIAL STANDING

Monogram contends that Heaton, as a borrower and credit card debtor, lacks prudential standing because she is not within the zone of interests protected by the statutes governing FDIC determinations concerning which institutions are insurable. Prudential standing requirements exist as an integral part of "judicial self-government."[17] The goal of this self-governance is to determine whether the plaintiff "is a proper party to invoke judicial resolution of the dispute and the exercise of the court's

---

[17] *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136).

remedial powers."[18]  To determine whether prudential standing exists, the Fifth Circuit asks "whether Plaintiffs' grievance (1) falls within the zone of interests protected by the statutory provision invoked in the suit, (2) raises a generalized grievance more properly addressed by the legislative branch, and (3) whether Plaintiffs are asserting his or her own legal rights and interest as opposed to the legal rights and interests of third parties."[19]  As stated by the Supreme Court, to qualify as "'adversely affected or aggrieved ... within the meaning' of a statute, a plaintiff must establish that the injury he complains of ... falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[20]

"A party's claimed injury from administrative action, therefore, will be considered 'within the meaning' of the relevant statute for purposes of 5 U.S.C. § 702 only if the party can meet the so-called 'zone of interests' test."[21]  In cases such as this,

---

[18]*See id.*(citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8, 106 S. Ct. 1326(1986)).

[19]*Id.*

[20]*Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 883, 110 S. Ct. 3177, 3186(1990)(quoting *Clarke v. Securities Industry Assn.* 479 U.S. 388, 396-97, 107 S. Ct. 750, 755(1987)).

[21]*Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004).

where the plaintiff herself is not the subject of the contested regulatory action, the prudential standing test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed the Congress intended to permit the suit.[22]  Thus, the question becomes whether Plaintiff's interests are sufficiently related to, and not inconsistent with, the purposes implicit in the FDIA to allow her to bring this lawsuit.[23]

An analogous case, *FDIC v. Morley*,[24] provides guidance on this question.  In *Morley*, a borrower sued by the FDIC on a defaulted loan filed a counterclaim challenging the FDIC's acquisition of his loan pursuant to the FDIC's loan assistance program.  The borrower asked the court to declare the FDIC's acquisition of his loan invalid and voidable because the FDIC did not conduct its financial assistance program under 12 U.S.C. § 1823(c).  The Eleventh Circuit

---

[22]*Clarke*, 479 U.S. at 399, 107 S. Ct. at 757.

[23]Plaintiff suggests the relevant inquiry is whether her claims are within the "zone of interests" protected by the Louisiana usury laws.  By making this argument, Plaintiff attempts to side-step the fact that the state usury law is preempted by section 1831d(a), which allows "State banks" to export their interest rates.  Thus, the pertinent inquiry is whether Plaintiff's claims are within the "zone of interests" protected by the FDIA.

[24]*FDIC v. Morley*, 867 F.2d 1381 (11th Cir. 1989), *cert. denied*, 493 U.S. 819, 110 S. Ct. 75(1989).

affirmed the district court's grant of summary judgment dismissing the counterclaim, holding that the borrower lacked standing to challenge the FDIC's financial assistance program under § 1823(c). Recognizing that prudential standing requires a litigant to demonstrate not only a judicially cognizable interest, but that the interest is arguably within the "zone of interests" that the statute was designed to protect, the *Morley* court concluded that a borrower of an insured bank falls outside the zone of interests protected by the FDIA because "the FDIA was enacted to protect depositors and bank shareholders rather than debtors of insured banks."[25] The court noted that "the essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law."[26] Congress designed the FDIA to stabilize the national banking system and promote depositor's confidence in the system, "not to protect debtors of insured banks."[27]

Numerous other cases have held that debtors of insured banks lack standing to challenge the FDIC's actions. For example, one district court held that a borrower lacked standing to question the

---

[25]*Id.* at 1391; *see FDIC v. Marina*, 892 F.2d 1522 (11th Cir. 1990)(reaching the same conclusion).

[26]*Morley*, 867 F.2d at 1391 (citation omitted).

[27]*Id.*

14

legality of the FDIC's receivership or acquisition of a bank's assets.[28]  Similarly, another district court concluded that a bank's debtors lacked standing to challenge the FDIC's decision to only accept some of the bank's liabilities.[29]

These authorities support the conclusion that the claims of Heaton, as a credit card borrower or debtor, are clearly incompatible with and fall outside the zone of interests intended to be protected by the FDIA.  Congress expressly enacted § 1831d(a) in order to "prevent discrimination against [State banks] with respect to interest rates."  Permitting a debtor such as Heaton to bring a collateral challenge to Monogram's insured status would undermine the very purposes of the FDIA in general and § 1831d(a) in particular, which are to stabilize the national banking industry, protect bank shareholders and depositors, and prevent rate discrimination against State-chartered banks that must compete against federally chartered banks.  Nothing in the text or history of the FDIA indicates that it was designed to protect the interests

---

[28]*See FDIC v. Moore*, 448 F. Supp. 493, 496 (D.C.S.C. 1978) (finding that only the bank and its shareholders could challenge the FDIC's actions).

[29]*See FDIC v. Lesselyoung*, 476 F. Supp. 938, 946 (E.D. Wis.), *aff'd sub nom. FDIC v. Lauterbach*, 626 F.2d 1327 (7th Cir. 1980).

of a debtor who defaults on a loan.[30]

### III. REMAINING STATE LAW CLAIMS NOT PREEMPTED

In addition to her claims arising out of the preempted Louisiana consumer usury laws, Plaintiff has also alleged claims on behalf of a putative subclass of consumers seeking recovery of allegedly excessive late-fee payments from 1988 to 1995 due to Monogram's breach of contract.[31] These claims are not subject to preemption by federal law because they are not based on violation of any state consumer laws, but rather are based on Monogram's alleged violation of its own credit card contract. It does not appear that the FDIC would have any interest in these remaining claims, and there are no other federal claims remaining. Considering that no class has yet been certified in this court and no trial date is currently scheduled, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over these remaining state law breach of contract claims. Accordingly,

---

[30] Plaintiff suggests that Monogram's standing argument is inconsistent with its position that Heaton is a "depositor" of Monogram in the sense that she (and other potential class members) may have had occasional credit balances on their accounts. However, Plaintiff does not bring her claims in this case as a "depositor" but as a credit card borrower/debtor who admittedly defaulted on her account.

[31] Plaintiff's "Amending and Supplemental Class Action Complaint", ¶ 3 (Rec. Doc. 150).

**IT IS ORDERED** that **Monogram Credit Card Bank of Georgia's Motion for Summary Judgment** (Rec. Doc. 181) should be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Federal Deposit Insurance Corporation's Motion for Summary Judgment** (Rec. Doc. 182) should be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Summary Judgment** (Rec. Doc. 184) should be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that **Monogram Credit Card Bank of Georgia's Motion to Strike** (Rec. Doc. 190) should be and hereby is **DENIED** as MOOT;

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Miscellaneous Relief** (Rec. Doc. 194) should be and hereby is **DENIED** as MOOT.

**IT IS FURTHER ORDERED** that Plaintiff's remaining state law breach of contract claims are hereby **REMANDED** to Civil District Court for the Parish of Orleans.

New Orleans, Louisiana this the 29th day of July, 2005.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17